# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 04-3166

———————

Minnesota Commercial Railway    \*

Company,    \*

   \*

        Appellant,    \*    Appeal From the United States

   \*    District Court for the

     v.    \*    District of Minnesota.

   \*

General Star Indemnity Company,    \*

   \*

        Appellee.    \*

———————

Submitted:  March 17, 2005
Filed:  May 24, 2005

———————

Before MURPHY, HEANEY, and SMITH, Circuit Judges.

———————

HEANEY, Circuit Judge.

This is an insurance coverage dispute arising out of a personal injury and retaliatory discharge action brought against Minnesota Commercial Railway Company (the Railway) in state court by former employee, Barbara Williams. General Star Indemnity Company (General Star) insured the Railway on a claims-made basis between February of 2000 and February of 2001.  In July of 2001, five months after the General Star policy expired, the Railway made a claim for insurance coverage for the injury Williams had sustained.  General Star denied coverage of the claim eight months later.  The Railway asserts that General Star had, in fact, accepted

coverage. The Railway sued General Star in federal court, seeking relief through the doctrine of estoppel. The parties brought cross-motions for summary judgment. The district court[1] granted General Star's motion, holding that under Minnesota law, General Star is not estopped from denying coverage. It neither accepted the defense of the state court action, nor controlled the defense through settlement or judgment. The Railway appeals, and we affirm.

We summarize the facts as follows. Between February 1, 2000 and February 1, 2001, the Railway held an insurance policy with General Star that covered claims made during the policy period. On November 5, 1999, Williams sustained an injury in the course of her employment with the Railway. She filled out a personal injury report, and the Railway treated the claim as a work-related injury. Williams received medical attention for her back, including surgery, and the Railway contributed approximately $41,870 toward her medical care, and, additionally, paid voluntary wage benefits and fringe benefits to her. On July 23, 2001, twenty-one months after the injury, the Railway submitted the Williams claim to General Star through Railway Claim Services, a third-party administrator for providing claims services on behalf of General Star. Although the Railway did not notify its insurers of the Williams injury until nearly two years after the injury, it claimed it did so because it was exhausting its self-insured retention (SIR) under its health care plan in effect between 1999 and 2001.

In August of 2001, Williams sued the Railway for her injury, pursuant to the Federal Employers Liability Act (FELA). The Railway defended itself,[2] eventually

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

[2]The Railway hired a local law firm to defend against Williams's suit. It is undisputed that the Railway and its attorneys controlled the defense of the Williams action.

settling the matter. General Star denied coverage on May 17, 2002 because a claim for Williams's injury was not filed during General Star's term of coverage. After General Star's denial of coverage, the Railway pursued coverage against General Star and Lloyd's of London. Lloyd's provided claims-made general commercial liability coverage to the Railway from February 1, 2001 to February 1, 2002, and provided indemnity coverage for the Williams claim under a loan receipt agreement. Lloyd's has refused to pay past or future defense expenses. The Railway seeks defense expenses of $150,000 plus attorneys fees.

The Railway concedes it submitted the claim too late to be covered by the policy, but contends that General Star's actions and delay in denying coverage implied it had accepted the claim, and is therefore estopped from denying coverage. The Railway asserts that under certain circumstances, Minnesota law permits an insured to create insurance coverage through estoppel even if the insurer did not control the defense in an action against the insured.

The Eighth Circuit reviews a grant of summary judgment de novo. Nettles v. American Tel. & Tel. Co., 55 F.3d 1358, 1362 (8th Cir. 1995). There is no dispute that Minnesota law governs this diversity suit. Estoppel is an equitable doctrine "intended to prevent a party from taking unconscionable advantage of his own wrong by asserting his strict legal rights." Northern Petrochemical Co. v. United States Fire Ins. Co., 277 N.W.2d 408, 410 (Minn. 1979). Under Minnesota law, in order for an insured to successfully invoke the doctrine of estoppel, it must demonstrate each of the following: (1) the insurer misrepresented a material fact (in this case, that it was accepting coverage); (2) the insurer knew that the representation was false; (3) the insurer intended that the representation be acted upon; (4) the insured did not have knowledge of the true facts; and (5) the insured relied upon the representation to its detriment. See Transamerica Ins. Group v. Paul, 267 N.W.2d 180, 183 (Minn. 1978). These factors must be established by a preponderance of the evidence, and the facts used to prove them must be "clear, positive, and unequivocal in their implications."

Rice St. VFW, Post No. 3877 v. City of St. Paul, 452 N.W.2d 503, 508 (Minn. Ct. App. 1990).

In Shannon v. Great Am. Ins. Co., 276 N.W.2d 77, 78 (Minn. 1979), the Minnesota Supreme Court held that estoppel cannot be used to expand or create insurance coverage where it does not exist. The court explained that "[t]he policy considerations in support of this principle are well founded, for it would be wholly improper to impose coverage liability upon an insurer for a risk not specifically undertaken and for which no consideration has been paid." Id. This general principle has been applied consistently by the Eighth Circuit and Minnesota courts. See Winthrop & Weinstine, P.A. v. Travelers Cas. & Sur. Co., 187 F.3d 871, 877 (8th Cir. 1999) (citing Shannon in finding an equitable estoppel claim to be without merit); Northwest Airlines, Inc. v. Federal Ins. Co., 32 F.3d 349, 356 (8th Cir. 1994) ("[W]aiver cannot be used to bring within the coverage of an insurance policy risks not covered by its terms.") (citations omitted)); Redeemer Covenant Church of Brooklyn Park v. Church Mut. Ins. Co., 567 N.W.2d 71, 76 (Minn. Ct. App. 1997) (holding that the insurer did not waive its right to invoke policy exclusions by failing to respond to insured's notice of claim within the 60-day statutory period and instead taking over two years); Continental Ins. Co. v. Bergquist, 400 N.W.2d 199, 201 (Minn. Ct. App. 1987) (holding that an insurer was not estopped from raising affirmative defense that insured's loss occurred prior to policy period).

There is a limited exception to Shannon, which permits the use of estoppel by an insured to actually create coverage where the insurer controls the litigation by the insured. Tozer v. Ocean Accident & Guar. Corp., 103 N.W. 509, 511 (Minn. 1905). The purpose of the doctrine of estoppel in such a circumstance is to prevent an insured from being left in the untenable position of having no voice in the litigation where the insurer is defending its own interests, not those of the insured. Patterson v. Adan, 138 N.W. 281, 283 (Minn. 1912); see also Mutual Serv. Cas. Ins. Co. v. Luetmer, 474 N.W.2d 365, 368 (Minn. Ct. App. 1991) ("If an insurer, with full

-4-

knowledge of the facts of a claim, defends its insured without reserving its right to deny coverage, the insurer may be estopped later to deny coverage."). Assumption-of-defense estoppel is narrowly applied, however, and is not applicable where the insurer has refused the defense of the insured, Globe. Indem. Co. v. Hansen, 231 F.2d 895, 906 (8th Cir. 1956); where the insurer gives a notice of a reservation of rights, Faber v. Roelofs, 250 N.W.2d 817, 821 (Minn. 1977); or where the insurer does not conduct the defense with knowledge of the relevant facts, Humphrey v. Polski, 200 N.W. 812, 812 (Minn. 1924).

Here, the Railway is not entitled to the use of the doctrine of estoppel to expand its coverage under its General Star policy because it controlled its own defense from the beginning of the Williams litigation. General Star refused to defend the Railway and denied coverage because the Williams claim was submitted after the General Star insurance policy had been terminated. As a result, the Railway cannot expand coverage through estoppel. See Globe Indem. Co., 231 F.2d at 906.

Appellee cites Transamerica Ins. Co. v. Int'l Broad. Corp., 94 F.3d 1204, 1207 (8th Cir. 1996) to support its contention that an insured may expand the scope of coverage by showing prejudice. Because Transamerica involves the late reservation of rights, something not at issue here, it fails to support the Railway's claim for equitable relief. Even if late reservation of rights were relevant here, the insured must demonstrate prejudice and an assumption of defense to expand the scope of coverage. This the Railway cannot do.

For the reasons cited above, we affirm the district court.

_____