Vergene A. BOULET, Appellant,

v.

**MILLERS MUTUAL INSURANCE ASSO-
CIATION OF ILLINOIS, an Illinois
corporation, Appellee.**

**No. 18178.**

United States Court of Appeals
Eighth Circuit.

June 23, 1966.

See also D.C., 36 F.R.D. 99.

Paul A. Skjervold, Minneapolis, Minn., for appellant.

Robert M. Austin, of Carroll, Cronan, Roth & Austin, Minneapolis, Minn., for appellee.

Before MATTHES and GIBSON, Circuit Judges, and HUNTER, District Judge.

GIBSON, Circuit Judge.

This is an appeal from the United States District Court for the District of Minnesota, in a diversity case, granting judgment for defendant, Millers Mutual Insurance Company of Illinois (Millers) on automobile liability policy. Minnesota law applies. Only two issues are presented on this appeal. They are:

I. Under Minnesota law, if an insurer, with full knowledge of the facts, voluntarily assumes the defense of an action, but due to a policy exclusion withdraws from the case prior to trial, is the insurer estopped from denying liability under the exclusion on the basis that the insured is conclusively presumed to be

prejudiced by the initial assumption of the defense?

II. If prejudice is not presumed as a matter of law when the insurer assumed the defense of the insured and then withdrew before trial, has appellant herein proved that she was in fact prejudiced by the insurer's actions?

The District Court resolved both issues against the appellant. If the answer to either one of the above is in the affirmative, appellant is entitled to reversal. However, if the answer to both is in the negative, the District Court must be upheld.

The complaint arises out of an automobile accident that occurred on April 1, 1961, at Fulda, Minnesota, when Mrs. Vergene Boulet, appellant herein and a daughter of Mrs. Frances Getzel (the named insured), while driving her mother's car collided with a second vehicle, driven by Dennis Finke and owned by his father, George Finke. Patricia Getzel, a minor daughter of Mrs. Frances Getzel, was a passenger in the car driven by her sister, Vergene Boulet, and was injured. Mrs. Getzel was not a passenger in the car. The Finke car was backing out from a parking spot when the collision occurred on one of the main streets in Fulda.

At the time of the accident, Mrs. Frances Getzel had in force a policy of automobile liability insurance with Millers. The policy contained a so-called "family exclusion", contained in Exclusion (i). This exclusion provided as follows:

"This policy does not apply under the Liability Coverage (i) to bodily injury to

(1) the spouse or any parent, son or daughter of the insured; or

(2) the named insured.".

Upon being informed of the accident, Millers retained the law firm of Mott, Grose and Von Holtum, Worthington, Minnesota, to make an investigation. On April 2, 1961, a statement was taken from Vergene Boulet by Mr. Grose which indicated that Dennis Finke was solely re-

sponsible for the accident. A report to this effect containing Vergene Boulet's deposition was forwarded to the insurer by Mr. Grose, who also represented Vergene Boulet in an action for damages against the Finkes. In September, 1962, this action was settled in favor of Vergene Boulet, for $2,000.00.

In January, 1963, Patricia Getzel, represented by her mother, brought an action against the Finkes in the Minnesota state court. Mrs. Getzel also joined in this action as co-plaintiff, seeking recovery of damages to her car. Both Getzels were represented by Mr. Grose. The attorney for the Finkes added Vergene Boulet as a third-party defendant. On March 28, 1963, Millers retained counsel to represent Vergene Boulet in this suit. It is clear that on this date Millers was aware that both Vergene Boulet and Patricia Getzel were daughters of its insured, Mrs. Frances Getzel, and also that by its interpretation of Exclusion (i) of Mrs. Getzel's policy there was no coverage thereunder and consequently there was no duty on its part to defend Vergene Boulet in the third-party action.

In a deposition given on April 13, 1963, Vergene Boulet changed her version of the facts of the accident from that which she had previously related in the written statement taken by Mr. Grose on April 2, 1961. In the deposition, she gave testimony which indicated that she might be either solely or jointly responsible for the occurrence of the accident. In the light of the foregoing, Mr. Grose, in the name of Mrs. Frances Getzel and Patricia Getzel, then cross-claimed against Vergene Boulet on April 17, 1963, and shortly thereafter, by letters dated April 26, 1963, and April 29, 1963, Millers informed Vergene Boulet that it was disclaiming and refusing to participate further in the lawsuit on the basis of the family exclusion provision of the policy. At the trial, the jury found negligence on the part of Vergene Boulet, but no negligence on the part of Dennis Finke. As a result, a judgment in behalf of Mrs. Frances Getzel, representing herself and her daughter Patricia, was entered against Vergene

Boulet on the cross-claim, in the amount of $8,342.31. In addition, Vergene Boulet incurred substantial attorneys' fees of $2,669.25 at the trial.

The present action was commenced by Vergene Boulet against Millers to pay the judgment as well as the fees of counsel for the defense of the claim against her in the Minnesota state court by her sister and mother, and also the attorneys' fees incurred in prosecuting the instant suit. The question of whether the family exclusion provision in her mother's policy excluded coverage of Vergene Boulet was an issue at the trial below. It was there held that the family exclusion provision did exclude coverage. Appellant does not dispute that determination in the instant appeal. Rather, the sole contention appellant presently makes is that Millers is estopped to deny coverage on the basis of the family exclusion provision and has waived any defense it had thereunder, because of the fact that it knew of the relationship of Vergene Boulet to Mrs. Frances Getzel, and being aware of the exclusionary clause on which it now relies, engaged counsel to defend Vergene Boulet on the third-party complaint filed against her by the Finkes, and actively engaged in the preparation for trial on that issue in the state court case that resulted in the judgment noted above.

The policy exclusion applies as much to a third-party complaint, seeking to shift responsibility in whole or in part for the damage, as to the cross-claim which sought a direct judgment against the third-party defendant, who was the omnibus insured. The practical result could be identical, and appellant urges that since Millers, with full knowledge of the factual situation of the relationship between the parties, voluntarily assumed the defense of the third-party complaint, they should be estopped from withdrawing from the case after the cross-bill was filed. Although the result might be the same, and it was in this case, Millers was entitled to view the filing of the cross-claim in an entirely different light than the involuntary placing of their omnibus insured in the case by the action of the Finkes, since any liability established against Finke would only be derivative against Boulet, the omnibus insured, if the jury found them both negligent and allocated a comparative part of the negligence against Boulet. There is a considerable factual difference in a cross-bill seeking to impose a direct liability in favor of the named assured and her minor daughter against the daughter of the insured, as the omnibus insured, than a third-party complaint over which neither the named insured nor the omnibus insured had any control. Credit and consideration must be given to the insurance company, Millers, which voluntarily attempted to settle or defend litigation when it was not legally obligated to do so under its contractual agreement. Here, the insurance company in good faith tried to defend and settle the third-party complaint. But the cross-bill within the factual context of this case, was more than it was willing to embrace. Millers' understandable withdrawal from the suit and its disclaimer of liability leaves for determination the question of whether Mrs. Boulet was prejudiced in her defense of the claim made against her by her mother and sister, which claim subsequently proceeded to trial after she had engaged her own counsel.

There is no question but that Millers withdrew as soon as it reasonably could process the information that led to the filing of the cross-bill on April 17, 1963. The deposition of Mrs. Boulet which radically changed the exposure picture for Millers[1] April 13, 1963, was not tran-

1. Mrs. Boulet, in her original statement, said she first saw the Finke vehicle when she was 10 to 15 feet from the rear thereof, but in her deposition stated she first observed the Finke vehicle "better than a half block away" when the Finke family was getting into the car (R. 39); and observed the Finke car backing out from its parking spot when she was 60 feet from the point of accident (R. 40).

scribed and available until April 24th, at which time it was forwarded to Millers by Mr. Hedeen, its attorney. Allowing for transmittal time and discussion between Millers and Hedeen, Millers promptly, on April 26, 1963, notified Mrs. Boulet of its withdrawal or disclaimer, followed by another letter, dated April 29, 1963, by Millers' attorney, Hedeen, notifying her of his withdrawal from the case. Also previously, on April 25th, a letter had been written by Millers to Mrs. Getzel, the named insured, containing a disclaimer.

■ Appellant contends that prejudice is conclusively presumed since Millers undertook the defense of the third-party complaint in the state court action. But, the trial court in its memorandum opinion stated the following well-settled Minnesota rule to be applicable in the present instance:

> " * * * when the insurer withdraws at a time and under circumstances which afford the insured an adequate opportunity to defend, the doctrine of waiver or estoppel is not applicable. The clear weight of the evidence requires a finding that whatever the insurer did in defending the insured in the third-party complaint proceeding filed by the Finkes did not prejudice the insured in proceeding with her defense to the cross-complaint filed against her, and, of course, no judgment was rendered against her on the third-party complaint."

We are in agreement with the trial court's statement of the above general rule. The law of Minnesota is clear to the effect that where an insurance company assumes the defense of an action or claim, with knowledge, actual or presumed, of a defense of non-liability under the policy, and conducts the action to final judgment, or the claim to settlement, it is estopped from raising the defense of non-coverage.

Prejudice, which is an essential element in an estoppel, is, in such a case, conclusively presumed to have resulted to the insured by the conduct of the insurer. But where, under like circumstances, the insurer disclaims and withdraws prior to final judgment or settlement, prejudice to the insured is not presumed and the insurer is not estopped from raising the defense of non-coverage without proof by competent evidence that the insured was actually prejudiced by its conduct. Security Ins. Co. v. Jay, 109 F.Supp. 87 (D. Minn.1952); Mann v. Employers' Liability Assur. Corp., 123 Minn. 305, 143 N.W. 794 (1913).

■ In the instant case, Millers did not conduct the defense of Vergene Boulet at the trial of the main action. It disclaimed and withdrew from the action prior to trial and shortly after a cross-bill was filed. Hence, as a matter of law, there is no conclusive presumption of prejudice to appellant resulting from the conduct of the insurer. Security Ins. Co. v. Jay, supra; Mann v. Employers' Liability Assur. Corp., supra. Under these circumstances, the burden rests upon the plaintiff to prove prejudice.

The Minnesota authorities cited by appellant in support of her contention that "(a)n insurer who with full knowledge voluntarily assumes the defense of an action excluded from coverage under the policy is thereafter precluded on the grounds of waiver and estoppel from asserting the exclusion," are not in point with the facts of the instant appeal. See General Tire Company of Minneapolis v. Standard Accident Insurance Company, 65 F.2d 237 (8 Cir. 1933); (some claims were settled before withdrawal) Peterson v. Maloney, et al., 181 Minn. 437, 232 N.W. 790 (1930); (disclaimer after trial and judgment) Simons v. Cowan, 217 Minn. 317, 14 N.W.2d 356 (1944); (disclaimer after trial and judgment) Williams v. Cass-Crow Wing Co-Operative

---

Mrs. Boulet's attorney, Richard T. Hefferan, admitted in his testimony, as follows:

"Q. That deposition (of Mrs. Boulet) had changed the complexion of this matter quite a bit, had it not, from her original statement?
A. Well, it sure had." (R. 63.)

Association, 224 Minn. 275, 28 N.W.2d 646 (1947) (notice question resolved against insurance company); Oehme v. Johnson, 181 Minn. 138, 231 N.W. 817, 81 A.L.R. 1308 (1930) (insurer settled one claim and also represents insured in another suit until after verdict and judgment). In all of these cases, the insurance company conducted the defense of the action involved either to final judgment or settlement. Therefore, it was correctly held in all instances that the insurer was, by its action, estopped from raising the defense of non-coverage, and that prejudice was conclusively presumed to have resulted to the insured from the conduct of the insurer. In the instant case, however, the insurer disclaimed and withdrew prior to final judgment or settlement.

The case of Schmidt v. National Auto & Casualty Insurance Company, 207 F.2d 301, 38 A.L.R.2d 1142 (8 Cir. 1953) is supportive of appellant's position, but that is a Missouri case and only the Minnesota law applies in this case. The Minnesota cases cited that bear directly on this issue support the trial court's decision, and it is apparent that Minnesota follows the general rule recognized by the New York case of Kearns Coal Corporation v. United States Fidelity & Guaranty Co., 118 F.2d 33 (2 Cir. 1941), cert. denied 313 U.S. 579, 61 S.Ct. 1099, 85 L.Ed. 1536, where the general rule is aptly stated 118 F.2d at page 36, and reads as follows:

"It is true that, where the insurer has retained control of the insured's defense to final judgment or to a settlement, many authorities hold that prejudice is presumed or that the assumption of control is a waiver of rights or an election. Royle Min. Co. v. Fidelity & Casualty Co., 126 Mo.App. 104, 103 S.W. 1098; Malley v. American Indemnity Corp., 297 Pa. 216, 146 A. 571, 81 A.L.R. 1322; * * * (and other citations) * * *. But however desirable such a rule may be as protecting an insured against the difficulty or impossibility of showing prejudice from a merely listless defense, its rea-

son does not apply when the insurer has withdrawn at a time and under circumstances where the insured is left an adequate opportunity to defend. Hence in the most nearly analogous case that we have found it was held that prejudice to the insured must be shown and that mere delay in making the disclaimer was not enough. Lavine v. Indemnity Ins. Co. of North America, 260 N.Y. 399, 183 N.E. 897, reversing 234 App.Div. 906, 254 N.Y.S. 1000 * * * (and other citations)."

We, therefore, hold on the first issue that prejudice is not conclusively presumed under Minnesota law, when an insurer assumes the defense of a suit and then withdraws before trial.

On the second issue, our review of the record of the trial below, together with our appraisal of case law relevant to this question, impels us to agree with the trial court, that the record is devoid of any evidence indicating that either the assumption of appellant's defense or the subsequent withdrawal by the insurer resulted in any prejudice to appellant. It is, therefore, our conclusion that appellant's burden of proof in this connection has not been sustained.

A review of the record shows:

During the period from March 28, 1963, when Millers retained counsel to represent Vergene Boulet in the third-party action, until it disclaimed coverage by letters dated April 25, 26, 1963, and April 28, 1963, the counsel thus retained did the following things:

(1) Arranged for a continuance of time for answer to the third-party complaint;

(2) Prepared and served an answer to the third-party complaint;

(3) Accepted service of a note of issue;

(4) Conferred with Vergene Boulet prior to the taking of her deposition;

(5) Attended the taking of Vergene Boulet's deposition, April 13, 1963, and the depositions of the other parties to the action;

(6) Agreed to share in the cost of an adverse medical examination already arranged by the Finkes' attorney and made on April 11, 1963;

(7) Accepted service of a cross-claim on April 17, 1963.

In addition, Millers, by letters of April 24, 26 and 29, 1963, authorized its attorney to contribute $500.00 to $750.00 toward settling the Getzel claims, but nothing was done in making this presentation to appellant's counsel. Millers disclaimed and withdrew shortly after the cross-claim of Frances Getzel (the named insured) and Patricia Getzel against Vergene Boulet (the omnibus insured and daughter of insured) was served. At no time did they represent Vergene Boulet in this particular phase of the lawsuit. Upon disclaiming and withdrawing, Millers turned over its complete file on the pending action to Boulet's personal attorney. At the subsequent trial of the action, Boulet was represented by her personal attorney, chosen by her at the time of Millers' withdrawal. This attorney testified at the trial below that he had reasonable and adequate time to prepare a defense; and that he could have requested a continuance of the trial but did not do so because he had adequate time to prepare fully for the trial.

Furthermore, plaintiff herself made no complaint with respect to the manner in which her personal attorney conducted her defense; neither does it appear that there was any loss of evidence from the insurer's action nor any discernible impairment of Boulet's defense therefrom. In fact, appellant's only complaint with respect to Millers' conduct was that its attorney, before the disclaimer and withdrawal, had not fully prepared her for her deposition of April 13, 1963, in that he had not allowed her to read the statement she had given the day following the accident, before giving her deposition. We feel this contention to be without merit on appeal, as the attorney employed by Millers disputed appellant on this point at the trial by testifying that, prior to the taking of her deposition, he had allowed her to read her prior statement and had gone over her statement with her.

There is clearly no basis for us to overrule the trial court's resolution of this conflicting testimony. Moreover, appellant testified at the trial below that she told the truth in her deposition of April 13, 1963, and it is a well-settled rule of law that prejudice in the instant context cannot result from a witness's truthful testimony. It is likewise clear that the questions asked appellant at the taking of her deposition on April 13, 1963, were proper and that the attorney retained by Millers did not fail in any duty to object to improper questions to his client. Appellant's obligation was to tell the truth at her deposition of April 13, 1963. We think defendant cannot be held liable for failure of its counsel in effect to coach the witness in testimony favorable to her interest. See Kearns Coal Corporation v. United States Fidelity & Guaranty Co., supra.

In light of the foregoing, both issues must be resolved against the appellant. The judgment of the District Court is affirmed.