No. 95-3733

Transamerica Insurance          *
Company,                        *
                                *
        Plaintiff-Appellee,     *
                                *
        v.                      *
                                *
International Broadcasting       *
Corporation; Island Fun         *   Appeal from the United States
Corporation, doing business     *   District Court for the
as Fantasy Island,              *   District of Minnesota.
                                *
                Defendants,      *
                                *
Michael Murach,                 *
                                *
        Defendant-Appellant,    *
                                *
John Murach,                    *
                                *
                Defendant.       *


                Submitted:  June 13, 1996

                Filed:  September 9, 1996


Before  BOWMAN  and  HEANEY,  Circuit  Judges,  and  BOGUE,[1]  District
      Judge.


HEANEY, Circuit Judge.

        Transamerica Insurance Company (Transamerica) brought a declaratory judgment action seeking a determination that Michael Murach's accident during a comedic diving performance was not covered by the insurance policy of Transamerica's policy holder,

_____

        [1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

the amusement park in which the accident occurred.  Holding that the policy excluded coverage and that Murach was precluded from invoking principles of waiver and estoppel, the United States District Court for Minnesota granted summary judgment in favor of Transamerica.  We reverse and remand.

BACKGROUND

Michael Murach was employed by Maxwell Associates, Inc. (Maxwell) to perform in a comedic diving show at amusement parks owned and operated by Fantasy Island, an affiliate of International Broadcasting Corporation (IBC).  This suit arises out of an accident described by Murach as follows:

> One June 23, 1990, Murach was performing in one of IBC's shows at Fantasy Island amusement park in Grand Island, New York.  Murach was dressed in ordinary street clothes and was seated in the audience, another performer explained part of the performance to the audience.  During this explanation, Murach began to heckle the performer and was called onto stage.  He came out of the audience, still dressed in street clothes, and was invited to join the other performer on a 20 foot platform.  As part of the comedic performance, he was to fall from the platform into a tank of water while still wearing his street clothes.  As he was standing on the platform with the other performer, he fell from the platform, sustaining severe injuries which have rendered him a quadriplegic.  He is now unable to move any part of his body below his neck.

(Murach's Mem. in Opp'n to Pl.'s Motion at 3.)

In October 1990, Murach initiated suit against the Island of Bob-Lo Company d/b/a Fantasy Island Amusement Parks.  IBC, as the parent company, was later added as a defendant (hereinafter the defendants will be referred to collectively as IBC).  Murach's suit alleged that his injury was caused by IBC's failure to maintain the platform.  It also alleged a violation of New York's Arts and Cultural Affairs Law which requires the sponsor of an artistic or

cultural event to provide performers with adequate safety equipment.

IBC tendered its defense to its insurance carrier, Transamerica. On November 13, 1990, Transamerica's agent wrote Fantasy Island:

> Pursuant to this law suit and the terms of the policy with Transamerica Insurance Company, please be advised that Tom Liptak of Saperston & Day has been retained to represent Fantasy Island. Therefore, please see to it that Mr. Liptak receives the full cooperation of Fantasy Island in the defense of this law suit. Also, you will note that the plaintiff seeks $20,000,000 in damages in the complaint. Since the total liability limits of your policies with Transamerica Insurance Company, are $11,000,000, $1,000,000-Basic and $10,000,000-Excess, please be advised that any judgment in excess of $11,000,000 will be the responsibility of Fantasy Island.

(Appellant App. 12.) Transamerica issued two insurance policies to IBC and its affiliates, one primary and one excess. The primary policy provided that Transamerica would pay sums up to one million dollars that the insured became legally obligated to pay because of bodily injury caused by an "occurrence." The policy also contained the following endorsement:

> With respect to any operations shown in the Schedule, this insurance does not apply to "bodily injury" to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor.

(Appellee App. 29.) The excess policy provided ten million dollars coverage and a slightly different "sports participant" exclusion that provided:

> The insurance does not apply to bodily injury, property damage, personal injury to any of your employees, or any person while practicing for or participating in any contest or exhibition of any athletic or sports nature sponsored, conducted, directed or participated in by you.

-3-

(Id. at 75.)

On August 30, 1991, IBC and its affiliates filed for bankruptcy protection in the United States Bankruptcy Court for the District of Minnesota. Murach asserted his claims against the IBC estate. IBC objected to the claims:

> To the extent Debtor is ultimately determined to be liable on the [Murach] personal injury claim . . . such claim is covered by Debtor's insurance policy in effect at the time of the alleged injury, except to the extent of the applicable deductible amount.

(Appellant App. 42.) In response to Murach's inquiries regarding the extent of IBC's insurance coverage, the defense attorneys retained by Transamerica on behalf of IBC wrote that "insurance coverage applicable to the above-referenced incident exists in the amount of $1 million aggregate with excess coverage in the amount of $10 million." (Id. at 73.) Murach alleges that based on his belief that insurance coverage was available to satisfy any judgment against IBC, he signed a stipulation on September 15, 1993, whereby he limited his claim against IBC's bankruptcy estate to the amount of IBC's deductible on its insurance policy, $10,000. (Id. at 92.)

Pursuant to the contract between IBC and Maxwell, which provided that Maxwell would defend and indemnify IBC for all claims arising out of the Maxwell performances, the defense of the Murach suit was then tendered to Maxwell's insurer, Utah Home Insurance (Utah). Utah disclaimed coverage and defense both because of late notice and because of a sports participant endorsement. After receiving Utah's response, Transamerica advised IBC on October 15, 1993 that it would disclaim coverage for the Murach suit.

On June 6, 1994, Transamerica commenced this action for declaratory judgment that the endorsements in questions excluded

coverage of the accident.  The United States District Court for the


ANALYSIS


    Summary judgment is appropriate only
of material fact and one party is entitled to judgment as a matter of law.
___ Fed. R. Civ. P. 56(c).  We review the grant of summary judgment d
novo,                                                                    .
See Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 58
(1986).


A.


    Murach argues that the endorsements in question are ambiguous an
must be construed in his favor so as not to exclude coverage.  For th
reasons discussed in the district court's
that Murach's comedic diving routine falls within the common understanding
   the term "athletic exhibition" and thus, is excluded from coverage unde
the Transamerica policy.


B.


    In the alternative, Murach argues that Transamerica either waived its
                                         ped from doing so.  Citing
the                     Shannon v. Great American Insurance Co.
(Minn. 1979), and its progeny,  the

---

[2]Continental_____, 400 N.W.2d 199 (Minn. Ct.
         Pedersen v. United Servs. Auto. Ass'n, 383 N.W.2d 427
      Ct. App. 1986); Malakowsky v. Johannsen              6
(Minn. Ct. App. 1985); _____
Nat'l Mut. Ins. Co., 372 N.W.2d 763 (Minn. Ct. App.), _____ or rev.
denied                    Twin City Hide v. Transamerica Ins.
Co.  358 N.W.2d 90 (Minn. Ct. App. 1984); _____ &
Casualty_____, 347 N.W.2d 848 (Minn. Ct. App.), pet
for rev. denied, (Minn. Dec. 20, 1984).

5

district court held that the principle of estoppel cannot be used to expand the scope of coverage available under an insurance policy. Although this represents the general rule under Minnesota law, the rule does not preclude claims of estoppel against insurance companies in all instances. _See, e.g._, Anderson v. Minnesota Ins. Guar. Ass'n, 520 N.W.2d 155, 160-61 (Minn. Ct. App. 1994) (holding that insurer may be estopped from asserting coverage restriction clause). In Northwest Airlines, Inc. v. Federal Ins. Co., 32 F.3d 349 (8th Cir. 1994), another case cited by the district court, this court examined the role of waiver within the context of insurance coverage under Minnesota law. While recognizing that "[i]n general, waiver cannot be used to bring within the coverage of an insurance policy risks not covered by its terms," we took note that an insurer might be estopped where a party is prejudiced by its actions.[3] _See_ _id._ at 356 (citing Faber v. Roelofs, 250 N.W.2d 817 (1977)); _see generally_ Couch on Insurance 2d (Rev. ed.) § 71:40 (1983) (hereinafter Couch) ("Equitable estoppel is available, under appropriate circumstances, to bring within insurance coverage risks or perils which are not provided for in the policy or which are expressly excluded."). Accordingly, the basis for our rejection of the appellant's claim of waiver in Northwest was that the appellant did "not argue that it was prejudiced or that the [appellee] controlled the [] litigation." _Id._ Each of the cases cited by the district court presented occasions in which there was no prejudice to the party asserting estoppel. _See_ Shannon, 276 N.W.2d at 78 (in face of unambiguous policy limit, oral statements not reasonably relied on); Bergquist, 400 N.W.2d at 201-02 (policy date adequately pled); Pedersen, 383 N.W.2d at 430-31 (accidental overpayment of

---

[3]It is only when the general rule is considered within the context of no prejudice to the claimant that this principal of law can be reconciled with another principle of law considered by the district court: an insurer who assumes the defense of the insured without reservation is estopped from denying coverage, _see_ discussion _infra_.

benefits); <u>Malakowsky</u>, 374 N.W.2d at 818 (no showing of prejudice wher

party against whom estoppel was asserted failed to raise exclusions early

litigation); _____, 372 N.W.2d at 767-68 (no

reliance where party seeking estoppel knew relevant facts)

<u>Twin City Hide</u>, 358 N.W.2d at 93 (alleged repres

after                                                                    <u>Rudzinski</u>, 34

N.W.2d at                                                                              e

cases, Murach alleges two bases of prejudice: 1)

IBC's                                                                                  a

representations                                                                        y

stipulation.


                                                                              verage

because                                   IBC's defense without reserving its

rights,                                                             <u>Mutual Serv.</u>

_____, 474 N.W.2d 365 (Minn. Ct. App. 1991) (citing

_____, 232 N.W.2d 790 (Minn. 1930); _____

<u>v. Liberty Mut. Ins. Co.</u>    N.W.2d 564 (Minn. Ct. App. 1990), <u>pet. for</u>

_____, (Minn. Mar. 15, 1991); <u>Gamble-Skogm</u> _____

<u>Indem. Co.</u>, 64 N.W.2d

established                                                                            d

parties, <u>see</u> ____, 390 N.W.2d at 472, Murach argues that, as a result of

bankruptcy action, he stands in the position of IBC and may assert

interest in precluding Transamerica from denying coverage. Citing

nnesota law requiring a showing of prejudice by the insured,[4]  e

court found that although the denial of coverage was tardy, IBC

establish the requisite prejudice because the action

had not proceeded to final judgment or settlement. Accepting _____

---

[4]    t v. <u>Millers Mut. Ins. Ass'n</u>, 362 F.2d 619, 622 (8t Cir.    <u>St. Paul Sch. Dist. v. Columbia Trasit Corp.</u>, 32 N.W.2d 41, 47 (Minn. 1982).

C's interest to Murach, we
affirm                                   respect to the prejudice to IBC
and therefore, focus on Murach's personal claims of prejudice.

        response to Murach's claim of prejudice arising out of th
representations made prior to his signing the bankruptcy stipulation, the
                                        w precluding a stranger to
an      rance contract from asserting estoppel against an insurer.[5]  Thi
principl   is  inapplicable  to  the  present  case.   <u>Cf.</u>            0
(discussing case law
not  in                                                              .
Alt       typically  an  injured  third  party  will  not  be  able  to  rely  on
                n insurer from denying coverage, this observation is
merely the result of
third party claims that he or
some           <u>See</u> Couch § 71:20.  The cases cited by the district court ar
distinguishable from the present case on this basis: each involved insurer
        that prejudiced _____.   <u>See</u> <u>Royal Ins. Co.</u>, 444 N.W.2d at 84
(allegation that insurer failed to provide
of termination to insured); ____, 390 N.W.2d at 472 (insurer's defense of
insured as basis for estoppel only open to insured); <u>Malakowsky</u>       d
at  816  (insurer  altered  the  basis  upon  which  it  denied  coverage  of
        Thus, third parties are not precluded from relying on principle
of                                                                   e
prejudiced in some way because of the insurer's acts.

---

[5]The district court cited the following state court decisions:
<u>Royal Ins. Co. v. Western Casualty Ins. Co.</u>, 444 N.W.2d 846, 848
(Minn. Ct. App. 1989); <u>Quam v. Wulfekuhle</u>, 390 N.W.2d 472, 474
(Minn. Ct. App.), <u>pet. for rev. denied</u>, (Minn. Sept. 24, 1986)
(citing <u>Malakowsky v. Johannsen</u>

Equitable estoppel may be asserted where (1) there has been a misrepresentation of material fact, (2) the party to be estopped knew of or should have known that the representation was false, (3) the party to be estopped intended the representation to be acted upon, (4) the party asserting equitable estoppel lacked the knowledge of the true facts, and (5) the party asserting the estoppel did, in fact, rely upon the misrepresentation to his or her detriment.  See <u>Transamerica Ins. Group v. Paul</u>, 267 N.W.2d 180, 183 (Minn. 1978).  The district court's order of summary judgment rejected Murach's claim of equitable estoppel as a matter of law; our decision today merely holds that Murach is not precluded from asserting estoppel against Transamerica.  We do not decide whether he has demonstrated the five elements of estoppel, an issue for a trier of fact.  Specifically, we do not pass judgment upon the relationship between Transamerica and the attorneys it hired to defend IBC, whether Murach reasonably relied on the answers by those attorneys regarding the applicability of the coverage, or whether Murach suffered any detriment by signing the bankruptcy stipulation.  Therefore, we remand this case to the district court for proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-